UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON ARCHIE FLICKINGER,<br><br>Plaintiff,<br><br>v.<br><br>JAQUELINE REYES CASTILLO, et al.,<br><br>Defendants. | Case No. 24-cv-02915-SVK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART EX PARTE APPLICATIONS**<br><br>Re: Dkt. Nos. 27, 29 |

Self-represented plaintiff Jason Archie Flickinger commenced this action on May 14, 2024 against 37 Defendants named in his amended complaint. Dkts. 1, 6. None of the Defendants have yet appeared. The Court has previously granted extensions of time to serve Defendants and adjudicated attendant service-related issues. *See* Dkts. 11, 21. Before the Court now are (1) Plaintiff's *ex parte* application for authorization of service by publication and extension of time for service as to Defendants Robert Crisp and Pedro Quintero (the "American Defendants"), (Dkt. 27); and (2) Plaintiff's *ex parte* application for electronic service of process and extension of time for service as to various Defendants located in Mexico. The Court has determined that both applications are suitable for resolution without oral argument. *See* Civ. L.R. 7-1(b). Having considered the *ex parte* applications, including Plaintiff's affidavit and declaration (*see* Dkts. 28, 30), the relevant law, and the record in this action, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's applications.

I.  **BACKGROUND**

Plaintiff has sued dozens of defendants who fall into one of three categories: (1) the American Defendants; (2) individuals residing in Mexico; and (3) government entities within Mexico, including Mexico itself. Dkt. 6 at 4-13. Some of the procedural history has been described in the Court's prior orders (*see* Dkts. 11, 21) but, in the interest of completeness, the

Court recounts it here briefly.

Plaintiff had previously tried, unsuccessfully, to serve Defendants. On August 9, 2024, moved the Court for an extension of time to serve individual[1] defendants and moved to serve Defendants by website publication. Dkt. 8 at 3. On August 12, the Court found good cause for Plaintiff's failure to serve Defendants despite his diligent efforts, and extended his deadline to serve those Defendants located within the United States. Dkt. 11 at 3. However, the Court explained that Plaintiff had not demonstrated the need for alternative service, nor that his requested method of alternative service—publication via his webpage—would comport with the requirements of due process. *Id.* at 3-4. The Court thus denied his request for alternative service.

On October 4, 2024, Plaintiff filed a purported proof of service of Defendant Robert Crisp and moved for entry of Clerk's Default. *See* Dkt. 12. The Clerk's Office declined to enter default because "Defendants [were] not properly served." *See* Dkt. 13.

On January 21, 2025, Plaintiff filed a status report explaining his efforts to serve Defendants. *See* Dkt. 14. Based on that status report, the Court concluded that (1) Plaintiff had attempted to serve Defendant Crisp by serving his father; (2) that he had attempted service on the Mexican-government entities by mailing a complaint and summons to the Central Authority for Mexico as set forth in the Hague Convention; and (3) Plaintiff had apparently not attempted to serve the other Defendants directly and, instead, had attempted to serve them only by serving Defendant Crisp as an agent on behalf of all Defendants (under the monicker, "International Conspiracy Against Jason Flickinger"). The Court explained that the first was ineffectual because Defendant Crisp no longer resided with his father, and extended Plaintiff's deadline to March 12, 2025. As to the second, the Court requested that Plaintiff provide a status update regarding service to the Mexican-government entities by March 27, 2025. As to the third, without opining on whether service on Defendant Crisp could constitute service of the remaining Defendants, the Court ordered Plaintiff to reattempt service on all remaining Defendants by March 12, 2025.

---

[1] As the Court has noted, "no deadline applie[s] to service of those Defendants located abroad," but "Plaintiff would nevertheless have to continue to diligently attempt service." Dkt. 8 at 1; Dkt. 11 at 3; Dkt. 21 at 1.

2

On March 12, Plaintiff did not file proof of service for any defendant. Instead, Plaintiff filed the *ex parte* applications seeking extensions of time and with new requests for service by alternative means. *See* Dkts. 27, 29. On March 27, Plaintiff provided the required status update as to his attempts to serve the Mexican-government entities. Dkt. 31.

## II. LEGAL STANDARDS

### A. Motion To Extend Time for Service

Under Federal Rule of Civil Procedure 4, a plaintiff must serve a defendant "within 90 days after the complaint is filed." *See* Fed. R. Civ. P. 4(m). Where a plaintiff fails to complete service by the deadline, the Court must either "dismiss the action without prejudice against th[e unserved] defendant or order that service be made within a specified time." *See id.* "In order to avoid dismissal for failure to serve the complaint and summons" by the deadline, "a plaintiff must show 'good cause.'" *Boudette v. Barnette*, 923 F.2d 754, 755 (9th Cir. 1991) (citations omitted). "At a minimum, 'good cause' means excusable neglect. A plaintiff may also be required to show the following: (a) the party to be served personally received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed." *Id.* at 756 (citation omitted).

### B. Motion for Alternative Service

The standard for alternative service differs based on whether the individual is outside of or within the United States. For individuals located within the United States, service may be accomplished in a judicial district of the United States pursuant to the law of the state in which the district court is located or in which service is made. Fed. R. Civ. P. 4(e)(1). In addition to personal service and service by mail, California law permits service by publication if:

> … upon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner specified in this article and that … [a] cause of action exists against the party upon whom service is to be made or he or she is a necessary or proper party to the action.

Cal. Civ. P. Code § 415.50(a).

With regard to individuals outside the United States, Rule 4 is more permissive. It permits

3

service by, *inter alia*, "means not prohibited by international agreement, as the court orders." *See* Fed. R. Civ. P. 4(f)(3). Thus, "service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the text." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). But

> [e]ven if facially permitted by Rule 4(f)(3), a method of service of process must also comport with constitutional notions of due process. To meet this requirement, the method of service crafted by the district court must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

*Id.* at 1016 (citations omitted). A plaintiff must also "demonstrate that the facts and circumstances of the [] case necessitate[] the district court's intervention." *See id.* Ultimately, "[t]he decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the 'sound discretion of the district court.'" *Brockmeyer v. May*, 383 F.3d 798, 805 (9th Cir. 2004) (citation omitted).

### III.  DISCUSSION

#### A.  Plaintiff's *Ex Parte* Application As To The American Defendants

##### 1.  Plaintiff Has Shown Good Cause For An Extension Of Time For Service Of Process As To Defendant Crisp

The Court previously found that, by detailing his extensive efforts to "contact opposing parties in every way imaginable," including "via email, Facebook, Whatsapp, and written communications personally delivered by [his] current Mexican council [sic]," Plaintiff had shown diligence in attempting to serve the American Defendants and good cause for an extension. Dkt. 11 at 3 (quoting Dkt. 8). Plaintiff has now further detailed his efforts to locate American Defendants via their Facebook accounts and how this resulted in Plaintiff successfully locating Defendant Crisp's parents' address and attempting service there. Dkt. 27 at 3.

Thereafter, Plaintiff sought help from the Legal Help Center at the San Jose Courthouse, as the Court had encouraged in its prior orders, for "assistance on the subject of serving such a large and diverse group of defendants." Dkt. 27 at 3; *see* Dkt. 11 at 5; Dkt. 21 at 3-4. Plaintiff hired a private investigator, Nighthawk Private Investigations ("Nighthawk"), to locate the American

4

Defendants. Dkt. 27 at 4. According to Plaintiff, Nighthawk was successful in locating an address for Robert Crisp, and "is actively serving process on Robert Crisp." *Id.* Nighthawk has been unable, however, to locate a definite address for Pedro Quintero, as further explained in § III.B., below. The Court finds that by continuing his own investigation, ultimately hiring a private investigator and actively attempting service of process on a defendant, Plaintiff has demonstrated diligence and good cause for an extension. *E.g.*, *Alldridge v. Gottlieb*, No. 6:24-cv-01745-MTK, 2025 WL 778215, at *4 (D. Or. Feb. 24, 2025) ("The evidence Plaintiffs submit in support of their motion demonstrates their diligence in seeking to serve Defendants through their multiple service attempts and their hiring of a private investigator to determine Defendant Gottlieb's current address."). Accordingly, the Court **GRANTS** Plaintiff's request for an extension of 45 days to serve Defendant Crisp. Plaintiff shall continue to attempt service on Defendant Crisp and file proof of service by **May 23, 2025.**

However, Plaintiff's request is complicated by the situation as to Defendant Quintero.

### 2. Plaintiff Has Likewise Shown Due Diligence And Good Cause For An Extension Of Time For Service Of Process As To Defendant Quintero, But Has Not—Yet—Shown The Need For Service By Publication

Nighthawk has been unable to locate Pedro Quintero because, as detailed in the declaration submitted by D. Wayne Patterson of Nighthawk, there were found to be "more than 100 individuals named Pedro Quintero in Los Angeles County and adjoining counties." Dkt. 28 at 1. Nighthawk avers that "more descriptive information such as a SSN, DOB, or middle name will be necessary to locate the defendant." Dkt. 28. Accordingly, Plaintiff requests that the Court permit service to Defendant Quintero by publication in "the San Bernardino City News newspaper, which" according to Plaintiff's investigations "is most likely to give actual notice to the party to be served." Dkt. 27 at 7.

Due process of law generally requires "notice, reasonably calculated, under all the circumstances, to appraise interested parties of pendency of the action and afford them an opportunity to present their objections. *Combs v. Doe*, No. 10-cv-01120-HRL, 2010 WL 4065630, at *1 (N.D. Cal. Oct. 15, 2010) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). It has also "been recognized that, in the case of persons missing or

unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits," and that this "creates no constitutional bar to a final decree foreclosing their right." *Id.* (citing *Mullane*, 339 U.S. at 317). Nonetheless, "service by publication must be allowed only as a last resort." *Duarte v. Freeland*, No. 05-cv-2780-EMC, 2008 WL 683427 *1 (N.D. Cal. Mar. 7, 2008).

Plaintiff has not yet arrived at this last resort. In *Combs*, for example, a court in this district permitted service by publication after Plaintiff "had conducted an internet WHOIS search, hired a private investigator, and subpoenaed several internet companies in an effort to discover defendants' true identities. [This] investigation led to discovery of a 'James Diaz,' ostensibly a California resident [with] a P.O. Box in Washington, D.C." *Combs*, 2010 WL 4065630, at *1. But when this P.O. Box turned out to be registered to a different individual, and after the defendant's phone number was identified to be a "Google switchboard number which is used to hide a subscriber's actual phone number," and after multiple other similar dead ends, the court explained that, "[a]ll leads having turned to dead ends," it would grant leave to serve the defendants by publication. *Id*. The situation here is not unlike *Combs*, but this Court cannot yet say that "all leads have turned to dead ends." *Id*. Rather, as Exhibit 5 shows and as Plaintiff represents, "Robert Crisp's social media accounts show[] the close friendship between Robert Crisp and Pedro Quintero." *See* Dkt. 27 at 7, 12. Accordingly, there is a fair chance that, if Plaintiff is able to serve Defendant Crisp, he may subsequently be able to obtain contact information for Defendant Quintero. *See Thieme v. Cobb*, No. 13-cv-3827-MEJ, 2013 WL 6072090, at *4 (N.D. Cal. Nov. 18, 2013) (denying without prejudice Plaintiff's application for service by publication where "Plaintiff has neglected to pursue other available avenues of inquiry such as serving interrogatories on co-defendants who had already been served and were properly before th[e] court.").[2]

Accordingly, Plaintiff's application for service by publication is **DENIED WITHOUT**

---

[2] Because the Court finds that the "last resort" of service by publication is not yet appropriate, it offers no opinion on whether the other requirement of Cal. Civ. P. Code § 415.50(a), that Plaintiff have a cause of action, is satisfied.

1  **PREJUDICE.** However, the Court **GRANTS** Plaintiff's application for additional time to serve
2  Defendant Quintero. Plaintiff shall have **45 days, beginning from the day on which Defendant**
3  **Crisp makes an appearance**, to file a status report as to Plaintiff's efforts to serve Defendant
4  Quintero and seek additional time to serve Defendant Quintero, if necessary. Plaintiff may renew
5  his application for service by publication at that time if necessary.

6            **B.**     **Plaintiff's *Ex Parte* Application As To The Individual Mexican Defendants**

7            In the Court's prior order, it encouraged Plaintiff to attempt service on the individual
8  Mexican defendants directly. Dkt. 21 at 3. Plaintiff's second *ex parte* application is directed to
9  this group of defendants. Dkt. 29-1. Plaintiff does not seek any relief with respect to the
10 Mexican-government entities for whom, as Plaintiff represents, service "is underway through the
11 Hague Service Convention." Dkt. 29-1 at 2.

12           The first half of Plaintiff's application, however, focuses essentially on the context of
13 Plaintiff's allegations. *See* Dkt. 29-1 at 2-11. While Plaintiff represents that these allegations help
14 to explain why he has been unable to effectuate service on individual defendants, these are the
15 same sorts of statements that Plaintiff has made previously and which the Court rejected. *See* Dkt.
16 11 at 3-4.

17           However, the latter half of Plaintiff's application does provide greater specificity as to the
18 efforts Plaintiff has taken to serve the individual defendants. Dkt. 29-1 at 13-14 (detailing money
19 paid to Plaintiff's current Mexican attorney in order to conduct a forensic investigation into certain
20 individual defendants), 15-16 (detailing Plaintiff's efforts, after this Court's prior orders, to search
21 online and "analy[ze] the Mexican legal documentation" that Plaintiff has in order to find
22 information on the individual defendants), 17 (detailing Plaintiff's efforts "to obtain people's
23 addresses" in particular). Plaintiff also explains that, after discussion with the Legal Help Center,
24 he has determined that "two parties that had minimal involvement" will "be difficult to locate,"
25 and has decided to remove them from the case. *Id.* at 12. In sum, although Defendant has not
26 been able to locate address information for the individual Mexican defendants, he represents that
27 he has "found reliable WhatsApp accounts and Email addresses for all Mexican National
28 defendants save seven of them," including the two intended-to-be-removed Defendants. *Id.* at 20.

Plaintiff now seeks to conduct service using this WhatsApp and Email information.

As a threshold matter, the Court finds that that service of individuals via registered electronic mail in Mexico is not prohibited by international agreements.  "Mexico and the United States are signatories of the Hague Convention referenced in Rule 4(f)(1)." *Gen. Star Indem. Co. v. First Am. Title Ins. Co. of Napa*, No. 20-cv-03210-TSH, 2020 WL 8614189, at *3 (N.D. Cal. Sept. 25, 2020) (citing Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"), Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638;  HCCH, Status Table (Apr. 11, 2018), *available at* https://www.hcch.net/en/instruments/conventions/status-table/?cid=17)) (collecting cases).  As the court in *General Star* explained,

> The primary means by which service is accomplished under the Convention is through a receiving country's "Central Authority," which the Convention requires each signatory nation to establish to act as an agent to receive a request for service and arrange for service of documents. … Although the Hague Convention outlines alternative methods of service, Mexico has objected to them and thus service through Mexico's Central Authority is the exclusive method by which a party can effectuate service.  Despite this, "numerous courts have authorized alternative service under Rule 4(f)(3) even where the Hague Convention applies." *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, 2011 WL 2607158, at *12 (N.D. Cal. July 1, 2011) (listing cases).  Courts have held that "alternative service may be ordered pursuant to Rule 4(f)(3) as long as the alternative method of service is not expressly prohibited by the Convention or objected to by the receiving state." *Id.* at *13 (listing cases).

*Id.* at *3 (certain internal citations omitted;  collecting cases).  Relevant here, service by email is not prohibited.  *Id.* (citing *Facebook, Inc. v. Banana Ads, LLC*, 2012 WL 1038752, at *2 (N.D. Cal. Mar. 27, 2012);  *Williams-Sonoma Inc. v. Friendfinder Inc.*, 2007 WL 1140639, at *2, *3 (N.D. Cal. Apr. 17, 2007)).  Although the Court has found no cases addressing WhatsApp specifically, Mexico's objection "to service of postal channels under Article 10 of the Hague Service Convention … does not prohibit service by email [because] courts have distinguished electronic mail from postal mail." *Browne v. Donalds*, No. 21-cv-02840-AB (AFM), 2023 WL 4626697, at *2 (C.D. Cal. Apr. 13, 2023).  WhatsApp is similarly distinguishable.

Next, unlike service by publication, such as Plaintiff seeks for American Defendants or

which Plaintiff sought (previously, via website publication) for the individual Mexican Defendants, "Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant." *Rio*, 284 F.3d at 1015. The Ninth Circuit has made clear that Rule 4(f)(3) does not "require[] attempted service by other methods, including diplomatic channels or letters rogatory, before resort to court-ordered service." *Id.* at 1015-16. The Court thus examines only whether "the facts and circumstances of the [] case necessitate[] the district court's intervention," and whether the method of alternative service proposed by Plaintiff is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 1016.

Given the difficulties Plaintiff has had in serving the individual Mexican Defendants and the added specificity in Plaintiff's attempts to contact various defendants (especially Plaintiff's now more-detailed explanation of his attempts to get information from his prior Mexican law firms), the Court's finds its intervention is necessary at this juncture. Plaintiff has also provided an extensive and detailed list of the email information and WhatsApp information, including a description of each, for each individual Mexican Defendant he was able to locate. Dkt. 29-1 at 21-23. "[S]ervice on an individual in a foreign country via email is properly within the Court's discretion." *Gen. Star*, 2020 WL 8614189, at *4 (quoting *Rio*, 284 F.3d at 1018 ("we leave it to the discretion of the district court to balance the limitations of email service against its benefits in any particular case.")). The Court sees no reason to treat WhatsApp accounts any differently, *i.e.*, to be examined on a case-by-case basis to determine whether they are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Rio*, 284 F.3d at 1016.

Having examined what documentary evidence of interactions was presented by Plaintiff, as well as the description for each email and WhatsApp account, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's application for alternative service, as indicated below:

- Jacqueline Reyes Castillo:  **GRANTED** as to Castillo's personal email, Mr. Reyes' email, and Mr. Escobedo's email;  **DENIED WITHOUT PREJUDICE** as to personal

9

WhatsApp and Mr. Reyes' WhatsApp, for which Plaintiff may renew his request if other service fails[3]; **DENIED** as to the HKtijuana.com email.

- Gloria Castillo de la Torre: **DENIED WITHOUT PREJUDICE.** Plaintiff may renew his request if he submits a declaration attaching exhibits tending to show that the WhatsApp information provided is linked to Defendant Gloria Castillo de la Torre and the last date on which the WhatsApp number was in use. Such exhibits may include, for example, screenshots of Facebook or other posts by the Defendants or legal documentation referred to by Plaintiff. *See* Dkt. 29-1 at 16.

- María de la Luz Castillo de la Torre: **DENIED WITHOUT PREJUDICE.** Plaintiff may renew his request if he submits a declaration attaching exhibits tending to show that the WhatsApp information provided is linked to Defendant María de la Castillo de la Torre and the last date on which the WhatsApp number was in use. Such exhibits may include, for example, screenshots of Facebook or other posts by the Defendants or legal documentation referred to by Plaintiff. *See* Dkt. 29-1 at 16.

- Eduardo Nicolas Mireles Jaime: **DENIED WITHOUT PREJUDICE.** Plaintiff may renew his request if he submits a declaration attaching exhibits tending to show that the WhatsApp information provided is linked to Defendant Eduardo Nicolas Mireles Jaime and the last date on which the WhatsApp number was in use. Such exhibits may include, for example, screenshots of Facebook or other posts by the Defendants or legal documentation referred to by Plaintiff. *See* Dkt. 29-1 at 16.

- Yolanda de Leon Garcia: **GRANTED**.

- Juan Carlos Degollado Rodríguez: **GRANTED**.

- Bertha Marine Casillas Martínez: **GRANTED**.

- María Concepción Mendieta Santos: **GRANTED**.

---

[3] *See Hunt v. Aslam*, No. 2:19-CV-00275-JNP-CMR, 2023 WL 3510961, at *2 (D. Utah May 17, 2023) (permitting service by WhatsApp of Defendant in the United Arab Emirates after service "personally, by mail, and by email [were] ineffective," where a showing was made that "the WhatsApp account for Defendant is authentic, and Defendant has used WhatsApp for communication purposes.").

10

- Rolando Castañeda Ruiz: **DENIED WITHOUT PREJUDICE.** Plaintiff may renew his request if he submits a declaration attaching exhibits tending to show that the WhatsApp information provided is linked to Defendant Rolando Castañeda Ruiz and the last date on which the WhatsApp number was in use. Such exhibits may include, for example, screenshots of Facebook or other posts by the Defendants or legal documentation referred to by Plaintiff. *See* Dkt. 29-1 at 16.
- Miguel Misael Martinez Anaya: **DENIED WITHOUT PREJUDICE.** Plaintiff may renew his request if he submits a declaration attaching exhibits tending to show that the WhatsApp information provided is linked to Defendant Miguel Misael Martinez Anaya and the last date on which the WhatsApp number was in use. Such exhibits may include, for example, screenshots of Facebook or other posts by the Defendants or legal documentation referred to by Plaintiff. *See* Dkt. 29-1 at 16.
- Rodrigo Iván Acevedo Macías: **GRANTED**.
- Luis Roberto Magaña Orozco: **GRANTED** as to both emails; **DENIED WITHOUT PREJUDICE** as to the WhatsApp accounts, for which Plaintiff may renew his request if other service fails.
- Raymundo Ventura Garcia: **DENIED WITHOUT PREJUDICE.** Plaintiff may renew his request if he submits a declaration attaching exhibits tending to show that the WhatsApp information provided is linked to Defendant Raymundo Ventura Garcia and the last date on which the WhatsApp number was in use. Such exhibits may include, for example, screenshots of Facebook or other posts by the Defendants or legal documentation referred to by Plaintiff. *See* Dkt. 29-1 at 16.
- Luis Enrique Martin Del Campo Valencia: **GRANTED** as to the email; **DENIED WITHOUT PREJUDICE** as to the WhatsApp account, for which Plaintiff may renew his request if other service fails.
- Cristobal Everardo Rodríguez Hernández: **GRANTED** as to both emails; **DENIED WITHOUT PREJUDICE** as to the WhatsApp account, for which Plaintiff may renew his request if other service fails.

11

- Judith Arzave Ramírez: **GRANTED**.
- Erik Osiris Rodríguez Huitrón: **GRANTED**.
- Francisco Javier Hernandez Favila: **GRANTED** as to email; **DENIED WITHOUT PREJUDICE** as to the WhatsApp account, for which Plaintiff may renew his request if other service fails.
- Luis Fernando Macías Montañez: **GRANTED** as to email; **DENIED WITHOUT PREJUDICE** as to the WhatsApp account, for which Plaintiff may renew his request if other service fails.
- Claudia Marcela Ibarra Betancourt: **GRANTED** as to email; **DENIED WITHOUT PREJUDICE** as to the WhatsApp account, for which Plaintiff may renew his request if other service fails.
- Israhel Martinez Peinado: **GRANTED** as to email; **DENIED WITHOUT PREJUDICE** as to the WhatsApp account, for which Plaintiff may renew his request if other service fails.
- Irving Terrazas Molina: **GRANTED** as to email; **DENIED WITHOUT PREJUDICE** as to the WhatsApp account, for which Plaintiff may renew his request if other service fails.

## IV.  CONCLUSION

In sum, the Court **ORDERS**:

- **Defendant Crisp:** Plaintiff shall continue to attempt service on Defendant Crisp, and file proof of service by **May 23, 2025.**
- **Defendant Quintero:** Plaintiff shall have **45 days, beginning from the day on which Defendant Crisp makes an appearance**, to file a status report as to Plaintiff's efforts to serve Defendant Quintero and seek additional time to serve Defendant Quintero, if necessary.  Plaintiff may renew his application for service by publication at that time.
- **Individual Mexican Defendants:** Plaintiff shall attempt service on the individual Mexican Defendants as follows, using Registered Email (https://registeredemail.com), as he proposed, for service on each email permitted by the Court.  Plaintiff is not yet

permitted to use WhatsApp with message delivery confirmation for service, but Plaintiff's requests may be renewed as explained above. Plaintiff shall **attach** the proposed summons at Dkt. 29-2, and also inform the defendant in plain text:

- o   of Plaintiff's name;
- o   that attached is a summons in a civil action in the United States District Court for the Northern District of California;  and
- o   that the case number is 5:2024-cv-02915.

Plaintiff shall proceed with service and file a proof of service for each of the Individual Mexican Defendants whom he was able to serve by **May 8, 2025.**

- **Unlocated Mexican Defendants:**  Plaintiff has represented that he could not find and "has removed" Gilda Reyes Barraza and Brenda Karina Cueto Castillohe from this action.  Plaintiff cannot simply "remove" defendants;  he will have to voluntarily dismiss them.  Fed. R. Civ. P. 41(a)(1)(A)(i).  The Court will direct Plaintiff to do so at a future date, after the outstanding service issues are resolved.  For the five remaining unlocated Defendants, whom Plaintiff believes he will be able to locate once other individual Mexican Defendants appear, (*see* Dkt. 29-1 at 20-21), the Plaintiff shall have **45 days, beginning from the day on which the first individual Mexican Defendant makes an appearance**, to file a status report as to Plaintiff's efforts to serve these Defendants.

- **Mexican-Government Entities:**  The Court again notes that the "Hague Convention does not impose any time limit on the central authority to effect service" and that "central authorities can and do take significantly longer than 90 days to arrange for service of process." *See Broad v. Mannesmann Anlagenbau AG*, 196 F.3d 1075, 1077 (9th Cir. 1999) (citation omitted).  Plaintiff shall continue to diligently pursue service on foreign entities. *See* Dkt. 11 at 3;  Dkt. 21 at 3.  Plaintiff shall provide the Court

////

////

////

13

with a status update on service of the Mexican-government entities by **May 23, 2025.**

**SO ORDERED.**

Dated: April 8, 2025

SUSAN VAN KEULEN
United States Magistrate Judge

14