United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JASON ARCHIE FLICKINGER,
Plaintiff,

v.

JAQUELINE REYES CASTILLO, et al.,
Defendants.

Case No. 24-cv-02915-NW

**ORDER GRANTING COAHUILA STATE DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT WITHOUT LEAVE TO AMEND; DENYING PLAINTIFF'S MOTION FOR JURISDICTIONAL DISCOVERY; DENYING COAHUILA STATE DEFENDANTS' MOTION TO STAY DISCOVERY AS MOOT**

Re: ECF Nos. 75, 81, 90

Before the Court are several motions filed by parties in this case: (1) a motion to dismiss ("MTD") the second amended complaint filed by Defendant Fiscalia General del Estado de Coahuila de Zaragoza ("Coahuila AG") and Defendant Gobierno del Estado de Coahuila de Zaragoza ("State of Coahuila") (together, the "Coahuila State Defendants"); (2) a motion for leave to conduct jurisdictional discovery filed by self-represented Plaintiff Jason Flickinger; and (3) a motion to stay discovery filed by the Coahuila State Defendants. ECF Nos. 75, 81, 90. For the following reasons, the Court GRANTS the MTD without leave to amend, DENIES the motion for jurisdictional discovery, and DENIES as moot the motion to stay discovery.[1]

Additionally, in light of the complicated posture of this case, the Court provides case management direction to Plaintiff at the conclusion of this Order. *See* Section IV.

[1] The Court previously found the MTD suitable for determination without oral argument. ECF No. 94. The Court similarly determines that the motion for jurisdictional discovery and the motion to stay discovery are suitable for determination without oral argument. Civil L.R. 7-1(b).

## I. BACKGROUND

The complicated facts of the case, based on the allegations of Plaintiff's first amended complaint and certain information subject to judicial notice, are described in Magistrate Judge van Keulen's report and recommendation that, *inter alia*, recommended dismissing the claims against the Coahuila State Defendants with limited leave to amend. ECF No. 67 (the "R&R") at 5–12; *see also* ECF No. 70 (adopting the R&R in full). In essence, "[t]he allegations herein arise from a whirlwind romance and marriage between Plaintiff and Defendant Jaqueline Reyes Castillo ('Jaqueline Castillo') and the subsequent actions of Jaqueline Castillo and the notary public, Defendant Erik Osiris Rodríguez Huitrón ('Erik Huitrón'), who 'wrote and notarized [their] civil marital contract.'" R&R at 5 (citing ECF No. 6 ("FAC"), § VI, ¶¶ 1-7). What ensued was a saga of fraud, intimidation and extortion that began in 2019 and continues to this day. *Id.* at 5–12; *see, generally*, ECF No. 74 ("SAC").

The allegations presented in the SAC are largely consistent with, but expand upon, those alleged in the FAC. Thus, the Court does not re-tread the background already described in the R&R but summarizes the factual and procedural history of the SAC as relevant to the Coahuila State Defendants and the motions before the Court. In dismissing Plaintiff's FAC, the Court granted the Coahuila State Defendants' motion to dismiss with leave to amend in several relevant respects. R&R at 43-44. Plaintiff's relevant amendments in the SAC are summarized below.[2]

### A. The Court's Prior Order and Plaintiff's Amendments as to the Foreign Sovereign Immunities Act ("FSIA") and its Exceptions

With regard to the Coahuila State Defendants' challenge under the Foreign Sovereign Immunities Act ("FSIA"), after considering the waiver, commercial activity, expropriations, noncommercial torts and international terrorism exceptions, the Court found the Coahuila State Defendants were entitled to sovereign immunity. R&R at 24–29. The Court granted leave to

[2] The Court also noted that, based on facts proffered in Plaintiff's oppositions to the initial motions to dismiss, he could "take this opportunity to add any of the other allegations he has proffered [] and otherwise amend to address the recent developments discussed therein." R&R at 44–45. Plaintiff has done so; for example, the SAC now includes 39 defendants and 43 causes of action. *See, generally*, SAC. But many of these allegations are not relevant to the instant motions.

United States District Court
Northern District of California

amend as to the waiver and commercial activity exceptions. *Id.* at 29-31.

**1. Plaintiff's Amendments Regarding the Waiver Exception**

For the waiver exception, the Court explained that "Plaintiff suggests that the Coahuila AG was a party to his contract for legal services with Roberto Magaña . . . [and the] contract [he] signed is not before this Court." *Id.* As Plaintiff concedes in his opposition, however, the "SAC is not pursuing . . . a waiver exception to the FSIA." ECF No. 76 at 5; *see also id.* at 8.

**2. Plaintiff's Amendments Regarding the Commercial Activity Exception**

For the commercial activity exception, the Court explained that the commercial activity at issue might be either the legal work undertaken by Defendant Luis Roberto Magaña Orozco ("Roberto Magaña") and/or the marital contract and the presale of Plaintiff's home performed by Erik Huitrón. R&R at 26-27. But because Plaintiff had not alleged "any routine involvement by the State of Coahuila or the Coahuila AG" in Roberto Magaña's legal representation or in the services performed by Erik Huitrón, the commercial activity exception did not extend to the Coahuila State Defendants. *Id.* Plaintiff was granted leave to amend as to the connections between Roberto Magaña, Erik Huitrón and the Coahuila State Defendants. *Id.* at 30-31. To that end, Plaintiff alleges:

- <u>As to Roberto Magaña's connections to the State of Coahuila and Coahuila AG:</u>
  - The State of Coahuila is responsible for the actions of, *inter alia*, the Centro De Justicia y Empoderamiento para Las Mujeres del Gobierno del Estado de Coahuila de Zaragoza (the "CJEM") and the Coahuila AG. SAC ¶ e; *see also* FAC ¶ ii (same allegation). Plaintiff's SAC expands this allegation to encompass the "agents and employees" of the CJEM and the Coahuila AG. SAC ¶ e.
  - The CJEM and Coahuila AG are each "an agency or instrumentality of" the State of Coahuila. SAC ¶¶ b–c.
  - The Coahuila AG oversees the CJEM. SAC ¶ c; *see also* FAC ¶ gg (same).
  - "[A]t all pertinent times" various Defendants referred to as the "Coahuila Agent Defendants," including Roberto Magaña and Erik Huitrón, were

United States District Court
Northern District of California

"acting in the course and scope of their d[u]t[i]es as State of Coahuila officials and/or employees[.]" SAC ¶ yy.

- That various specifically alleged facts support the inference that Roberto Magaña was an agent of the CJEM with both actual and apparent authority. *See* SAC ¶¶ 702-30.
- That various specific alleged facts support the inference that the CJEM ratified and approved of Roberto Magaña's actions. *See* SAC ¶¶ 731–32.
- The actions undertaken by Roberto Magaña were "for the benefit of" the State of Coahuila in various ways, including by protecting Erik Huitrón and preventing embarrassment to the state. SAC ¶¶ 1147–53.
- "Roberto Magaña was under control and had routine involvement with the Coahuila AG." SAC ¶ 1154.

- <u>As to Erik Huitrón connections to the State of Coahuila and Coahuila AG:</u>
  - "[A]t all pertinent times" various Defendants referred to as the "Coahuila Agent Defendants," including Roberto Magaña and Erik Huitrón, were "acting in the course and scope of their d[u]t[i]es as State of Coahuila officials and/or employees[.]" SAC ¶ yy.
  - Erik Huitrón, in addition to being a notary, is "president of the local PRI [political] party," that the party "has control of the state of Coahuila. SAC ¶ 136; *see also* FAC ¶ 38 (same allegation).
  - Plaintiff adds detailed allegations about the relationship between the PRI party and the State of Coahuila, including:
    - The PRI party "has control over all government agencies in Coahuila and the entire political apparatus." SAC ¶ 697.
    - The current and previous Governors of the State of Coahuila have been from the PRI party, and the Governor chooses the state's attorney general. SAC ¶ 698.
    - The PRI party controls the municipal police forces within the State

United States District Court
Northern District of California

of Coahuila. SAC ¶ 699.

- Erik Huitrón is politically connected in the State of Coahuila, including to its current Governor and President of the State Congress. SAC ¶ 701.

Based on the above allegations, Plaintiff's SAC seeks to hold the State of Coahuila and the Coahuila AG[3] accountable for the breaches of contract and contractual fraud committed by the Coahuila Agent Defendants, including Roberto Magaña and Erik Huitrón. SAC ¶¶ 1147–55 (Thirty-Fifth Cause of Action for "Respondeat Superior).

**3. Plaintiff's Amendments Regarding the Noncommercial Tort Exception**

Plaintiff's thirty-fifth cause of action also seeks to impose liability for noncommercial torts, as confirmed by Plaintiff in his opposition. *See* ECF No. 76 at 8–9. Many of the same allegations discussed above, including Roberto Magaña's, but also the other Coahuila Agent Defendants', employment with the Dirección de Seguridad Publica Municipal de Torreón, *i.e.*, the Torreón police department ("Torreón PD") or the CJEM are included to support this liability. *See* ECF No. 76 at 9; SAC ¶¶ 1147–55. But as noted above, the Court did not grant leave to amend regarding the noncommercial tort exception. R&R at 29-30.

**B. The Court's Other Rulings and Plaintiff's Corresponding Amendments**

Because the Court granted leave to amend as to the FSIA, for the sake of judicial efficiency, the Court analyzed the other arguments advanced by the Coahuila State Defendants. R&R at 31-43. In relevant part, the Court dismissed Plaintiff's claims against the Coahuila State Defendants with leave to amend based on: (1) a lack of personal jurisdiction based on insufficient allegations of either direct contacts with the State of California and Roberto Magaña; (2) insufficient allegations to state plausible claims based on conspiracy, agency, or respondeat

[3] As the Coahuila State Defendants point out, none of Plaintiff's causes of action are explicitly directed at the Coahuila AG. ECF No. 75 at 26. But Plaintiff is self-represented, and "[i]t is an entrenched principle that pro se filings[,] however inartfully pleaded[,] are held to less stringent standards than formal pleadings drafted by lawyers." *See United States v. Qazi*, 975 F.3d 989, 992-93 (9th Cir. 2020). It is clear from Plaintiff's SAC that intends to bring his thirty-fifth cause of action, "respondeat superior," against both the Coahuila AG and the State of Coahuila. *See, e.g.*, SAC ¶ 1154.

superior; (3) failure to state a claim under the Torture Victims Protection Act ("TVPA"); (4) failure to state a claim for intentional infliction of emotional distress; and (5) failure to state a RICO claim. *Id.*

Plaintiff's underlying factual allegations as to conspiracy, agency, or respondeat superior, which also affect personal jurisdiction, are discussed above. *See, supra*, § I.A.2. The only other relevant amendments added new torture-based claims against the State of Coahuila under Mexican federal laws. SAC ¶¶ 1162–72 (Thirty-Seventh Cause of Action). Plaintiff also alleges that the State of Coahuila must indemnify him for the harm caused by the torture, though it is not clear whether that is a separate claim or merely a remedy for the former claim. SAC ¶¶ 1216–1219 (Forty-Third Cause of Action).

## II. LEGAL STANDARD

### A. The Foreign Sovereign Immunities Act ("FSIA")

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "The Foreign Sovereign Immunities Act of 1976 (FSIA), 28 U.S.C. § 1602 *et seq.*, establishes a comprehensive framework for determining whether a court in this country, state or federal, may exercise jurisdiction over a foreign state." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 610 (1992). In other words, the FSIA is the "'sole basis' for United States federal courts to obtain jurisdiction over a foreign state." *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1127 (9th Cir. 2012) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989)). "Under § 1604 of the FSIA, 'a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided' in various exceptions." *Id.* The eight exceptions to the FSIA are laid out in §§ 1605, 1605A, and 1605B. A plaintiff may bring suit against a foreign nation pursuant to: (1) waiver by the foreign sovereign; (2) the commercial activity exception; (3) the expropriation exception; (4) the successor exception; (5) the noncommercial torts exception; (6) the arbitration exception; (7) the state-sponsored terrorism exception; and (8) the international terrorism exception. *Id.*

### B. Jurisdictional Discovery and the FSIA

Generally, a "district court is vested with broad discretion to permit or deny discovery[.]"

*Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). Jurisdictional discovery "should be granted where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary." *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 (9th Cir. 1977). But the "FSIA was meant to spare foreign states not only from liability on the merits but also from the cost and inconvenience of trial." *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1127 (9th Cir. 2010). It "is an immunity from trial and the attendant burdens of litigation." *Id.* Accordingly,

> [b]ecause of the delicate balance between permitting discovery to substantiate exceptions to statutory foreign sovereign immunity and protecting a sovereign's or a sovereign agency's legitimate claim to immunity from discovery, jurisdictional discovery in FSIA cases should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination.

*Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F.3d 1081, 1094 (9th Cir. 2018) (internal quotation marks and citations omitted).

### C. Leave to Amend

Regarding self-represented plaintiffs, courts "are specifically directed to construe *pro se* pleadings liberally." *United States v. Qazi*, 975 F.3d 989, 993 (9th Cir. 2020). But *pro se* pleadings must still allege facts sufficient to allow a reviewing court to determine whether a claim has been stated. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## III. DISCUSSION

### A. The Coahuila State Defendants Are Entitled to Foreign Sovereign Immunity

As this Court previously explained, the Coahuila State Defendants are foreign states under the FSIA because the State of Coahuila is a state of the country of Mexico, while the Coahuila AG is the criminal prosecution agency for the State of Coahuila. R&R at 25 (explaining that "a 'foreign state' includes 'provincial- and township-level bodies' as well as 'law-enforcement agencies."); *see also* SAC ¶¶ c., e. Accordingly, the Coahuila State Defendants are entitled to immunity under the FSIA unless one of its exceptions applies.

#### 1. Plaintiff Disclaims the Waiver Exception

As to the waiver exception, Plaintiff concedes that the agreement between Roberto

United States District Court
Northern District of California

Magaña, his co-conspirators and Plaintiff was "ongoing and changing" and evidenced "by written WhatsApp messages and spoken communications. There was not discussion of a forum selection clause or a choice of law clause." ECF No. 76 at 8. Accordingly, Plaintiff concedes that he is no longer "pursuing . . . a waiver exception to the FSIA." *Id.* at 5. Thus, this exception does not apply.

**2. The Commercial Activity Exception Does Not Apply to the Coahuila State Defendants via Roberto Magaña's or Erik Huitrón Activities**

The commercial activity exception requires the suit to be "based upon" either "commercial activity" that was "carried on in the United States by the foreign state" or any "act . . . in connection with a commercial activity" that was either "performed in the United States" or "causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). As the Court previously explained, based on Plaintiff's allegations and assuming the requisite nexus to the United States, the alleged commercial activity here "consisted of a civil and criminal litigation, an amparo proceeding, and a divorce proceeding by Roberto Magaña [and his associates], as well as the marital contract, and the presale of Plaintiff's home, that was done by Erik Huitrón." R&R at 26 (internal quotation marks omitted) (citing FAC ¶¶ i–l; ECF No. 60 at 14-15); *see also* SAC ¶¶ rr, 145, 150, 163–69, 173, 178–82, 184–225, 227–31, 233–39, 242–44, 255–61, 263, 268–340, 344–52, 356–80, 382–92, 394–405, 408, 410–433, 435–48 (detailing the course of Plaintiff's legal engagement with Roberto Magaña and his associates, from April 21, 2020 to September 29, 2022); SAC ¶¶ l, tt, 33–34, 136 (detailing the services performed by Erik Huitrón). As the Court explained, however, "in order for this Court to attribute the acts of Roberto Magaña or Erik Huitrón to a foreign sovereign Plaintiff would need to allege 'day-to-day, routine involvement by [the State of Coahuila or the Coahuila AG] in its subordinates' operations' sufficient to 'establish the existence of a principal–agent relationship,'" and Plaintiff had not done so. R&R at 26–27 (quoting *Sachs v. Republic of Austria*, 695 F.3d 1021, 1025 (9th Cir. 2012), *rev'd on other grounds sub nom. OBB Personenverkehr v. Sachs*, 577 U.S. 27 (2015)).

Plaintiff's SAC does not cure the deficiencies of the FAC in this respect. There are *no* allegations that Roberto Magaña had any involvement with the State of Coahuila itself. *See* SAC

¶¶ 702-30. And while there are a few high-level allegations of Roberto Magaña's use of "Coahuila AG offices" and his "work with the Coahuila AG agents" when the Court examines the detailed underlying allegations, they fall into two categories: either innocuous access of State of Coahuila or Coahuila AG resources, *e.g.*, entry into the public courthouse, or the more troubling collusion between Roberto Magaña and individuals who appear to be agents and employees of the CJEM. *See* SAC ¶¶ 710–17 (cross-referencing paragraphs 300, 302, 309, 332). While Plaintiff's allegations on this point are not entirely clear, his opposition confirms this reading: "The SAC elaborates on the routine involvement of the Coahuila AG with Roberto Magaña, the CJEM, and Erik Huitrón. The SAC addressed that the CJEM is an agency/institution of the Coahuila AG, and the CJEM employees are in fact Coahuila AG employees." ECF No. 76 at 5.

Thus, as Plaintiff admits in opposition, his allegations of day-to-day, routine involvement by "Coahuila AG agents" with Roberto Magaña relies on collapsing the State of Coahuila, the Coahuila AG, and the CJEM into a single entity. *See* ECF No. 76 at 7 ("Plaintiff does not concur with the separation of the State of Coahuila and its agencies or instrumentalities into separate defendants. Per 28 U.S.C. § 1603(a), a foreign state includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state. . . . Thus, the State of Coahuila, the Coahuila AG, the DSPM, and the CJEM, are one and the same - the State of Coahuila."). But as this Court already explained to Plaintiff, the FSIA does not support his argument:

> although a political subdivision or agency . . . may benefit from FSIA immunity, the FSIA does not automatically create a two-way relationship for attribution of liability: It does not "affect the substantive law determining the liability of a foreign state or instrumentality, or the attribution of liability among instrumentalities of a foreign state." *Flatow v. Islamic Republic of Iran*, 308 F.3d 1065, 1069 (9th Cir. 2002) (quoting *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 620 (1983). Rather, to overcome the presumption of different subdivisions' "separate juridical status," a plaintiff must allege "day-to-day, routine involvement by [Mexico] in its subordinates' operations" sufficient to "establish the existence of a principal–agent relationship." *Sachs v. Republic of Austria*, 695 F.3d 1021, 1025 (9th Cir. 2012) (citing *Flatow,* 308 F.3d 1065), *rev'd on other grounds sub nom. OBB Personenverkehr v. Sachs*, 577 U.S. 27 (2015).

R&R at 18–19.

Nor are Plaintiff's conclusory allegations that the Coahuila AG oversees the CJEM, that Roberto Magaña was acting within the scope of his employment as an official of the State of Coahuila, that his actions were undertaken for the benefit of the State of Coahuila and the Coahuila AG, or that he "was under control and had routine involvement with the Coahuila AG" sufficient to survive a pleading challenge. *See, supra*, § I.A.2. The Court agrees with the Coahuila State Defendants that, no matter how much involvement by the CJEM in Roberto Magaña's activities has been alleged, Plaintiff has failed to allege distinct involvement by the Coahuila AG or the State of Coahuila, so the commercial activity of Roberto Magaña cannot be attributed to the Coahuila State Defendants.

As to the commercial activities of Erik Huitrón, Plaintiff has alleged disturbing and troubling connections between Erik Huitrón and the State of Coahuila, including its high-ranking government officials. *See, supra*, § I.A.2. But Plaintiff's allegations go in the wrong direction to impose liability on the State of Coahuila. For example, Plaintiff alleges that Erik Huitrón is the "president of the local PRI [political] party" and his party "has control of the state of Coahuila." SAC ¶ 136. But neither this nor Plaintiff's other, similar allegations support an inference that actions undertaken by the State of Coahuila might be attributable to Erik Huitrón; if anything, Plaintiff's allegations suggest that Erik Huitrón might be responsible for the activities of other political actors within the State of Coahuila, not the other way around. Critically, Plaintiff does not allege that the State of Coahuila was in any way involved with the commercial activity at issue here, *i.e.*, the marital contract and attempted sale of Plaintiff's home, let alone on a day-to-day or routine basis. *See, generally*, SAC. Therefore, the commercial activity of Erik Huitrón also cannot be attributed to the Coahuila State Defendants.

Because Plaintiff has not alleged day-to-day, routine involvement by the Coahuila State Defendants in either of the commercial activities at issue, this exception does not extend to them.

**3. Plaintiff Misunderstands the Court's Ruling as to the Noncommercial Torts Exception, Which Does Not Apply**

Finally, Plaintiff has re-alleged certain claims against the Coahuila State Defendants based on the noncommercial torts exception. *See, supra*, §§ I.A.3., I.B. As Plaintiff explains in his

opposition, he "is still pursuing a noncommercial torts exception" because "this Court ruled 'th[e] [abuse of process] exclusion plainly applies to the acts committed by the Ministerios Publico, María Concepción, and the two public defenders." ECF No. 76 at 9 (citing R&R at 29). Plaintiff, perhaps understandably, misreads the Court's prior ruling on this complicated FSIA topic. The FSIA presumptively grants the Coahuila State Defendants immunity. *See* R&R at 25. Then, one or more FSIA "exceptions" might apply, such as waiver, commercial activity, noncommercial torts, etc. *See* R&R at 25–29. Some of these exceptions, including the noncommercial torts exception, have "exclusions." These exclusions are exceptions-to-the-exceptions, *i.e.*, if an *exclusion* applies, then the Coahuila State Defendants retain their immunity. In that context, the Court ruled that even if the noncommercial torts exception applied, torts allegedly committed by the six officials or employees of the State of Coahuila or the Coahuila AG—the specific torts complained of by Plaintiff—would:

> **fail** under the second exclusion to the noncommercial torts exception: The [noncommercial torts] exception does not apply to "any claim arising out of malicious prosecution [or] abuse of process . . . ." 28 U.S.C. § 1605(a)(5)(B). This **exclusion plainly applies** to the acts committed by the Ministerios Publico, María Concepción, and the two public defenders. **Accordingly, as those are the only alleged officials or employees of the Coahuila State Defendants, the noncommercial tort exception does not apply**.

R&R at 28-29 (emphasis added). Plaintiff's amendments under this exception are improper, and as already determined, this exception does not apply to the Coahuila State Defendants.

* * *

Because none of the exceptions to the FSIA apply to the Coahuila State Defendants, the claims against them are DISMISSED for lack of subject matter jurisdiction and personal jurisdiction under the FSIA. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434, 434 n. 3 (1989)) ("[t]he FSIA [is] the sole basis for obtaining jurisdiction over a foreign state in our courts," including personal jurisdiction and subject-matter jurisdiction alike).

### B. The Court Declines to Grant Leave to Amend, and So Does Not Address the Coahuila State Defendants' Remaining Arguments

As this Court previously explained, although a "district court should not dismiss a *pro se*

complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment," amendment may be futile in certain circumstances, including "when defendants are afforded immunity." R&R at 23 (internal quotation marks and citations omitted). Here, the Court has already afforded Plaintiff an opportunity to amend to allege day-to-day, routine involvement with by the Coahuila State Defendants in the commercial activities of Roberto Magaña and/or Erik Huitrón. Plaintiff has taken the opportunity seriously, adding copious details to his complaint, which now spans 1219 numbered paragraphs. Yet, while adding many details about, *inter alia*, Roberto Magaña's contacts with attorneys at the CJEM, Plaintiff has failed to tie those activities at issue directly to the Coahuila State Defendants. Accordingly, the Court finds that further leave to amend would be futile and DENIES leave to amend.

Moreover, because the Court dismisses Plaintiff's claims against the Coahuila State Defendants without leave to amend, the Court does not address the Coahuila State Defendants' other arguments at this juncture.

### C. Plaintiff's Motion for Jurisdictional Discovery is Denied and the Coahuila State Defendants' Motion to Stay Discovery is Denied as Moot

Co-pending with the Coahuila State Defendants' motion to dismiss is Plaintiff's motion for leave to take jurisdictional discovery. ECF No. 81. Plaintiff seeks to take jurisdictional discovery on a variety of subjects intended to support the Court's personal jurisdiction over the Coahuila State Defendants including, for example, "[t]he extent of collaboration of the [] CJEM Agents with Roberto Magaña[,] . . . whether they were CJEM agents or Coahuila AG agents" and whether "the Coahuila AG received monies from Plaintiff" which he alleges were paid to Roberto Magaña. ECF No. 81 at 7-8. Coahuila State Defendants oppose the motion. ECF No. 85.

The Ninth Circuit has cautioned that "jurisdictional discovery in FSIA cases should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination." *See Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F.3d 1081, 1094 (9th Cir. 2018) (internal quotation marks and citations omitted). The fundamental flaw in Plaintiff's request for jurisdictional discovery is the same as in his assertion of the commercial

activity exception: the weight of Plaintiff's allegations, viewed in the light most favorable to Plaintiff, suggests at most that Roberto Magaña was in collaboration with and was directed by the CJEM. *See, supra*, § III.A.2. Plaintiff's requests are not directed to verifying allegations critical to the immunity determination *of the State of Coahuila and the Coahuila AG* but, at best, go to verifying whether the CJEM—who is not a party to the pending motions—is entitled to immunity. Plaintiff's request is DENIED.

Finally, because the Court denies Plaintiff's motion for jurisdictional discovery and dismisses the claims against the Coahuila State Defendants, their motion to stay discovery is DENIED as moot. *See* ECF No. 90.

## IV. CONCLUSION AND CASE MANAGEMENT

For the foregoing reasons, the Court GRANTS the Coahuila State Defendants' motion to dismiss and DISMISSES the claims against them without leave to amend, DENIES Plaintiff's motion for jurisdictional discovery, and DENIES as moot the Coahuila State Defendants' motion to stay discovery.

Moreover, the status of the remaining Defendants in this action is complicated. There are 39 Defendants named in the SAC, of which two (the State of Coahuila and the Coahuila AG) are hereby dismissed. SAC at 1. Additionally, three other former Defendants (the country of Mexico and two Mexican individuals) were previously dismissed. *See* ECF No. 70 (adopting R&R dismissing Mexico with prejudice); ECF Nos. 23, 23-1 (voluntarily dismissing two Mexican individuals). There remain 37 Defendants in this case with the following status:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

| Defendant | Service Status | Appearance Status |
|---|---|---|
| Centro de Justicia y Empoderamiento Para Las Mujeres del Gobierno del Estado de Coahuila de Zaragoz ("CJEM") (Mexican-government entity) | Served October 11, 2024. ECF No. 38-1. | Not yet appeared.<br><br>Plaintiff sought entry of default on April 21, 2025, which was denied by the Clerk of Court for failure to file proof of service. ECF Nos. 35-36.<br><br>Plaintiff filed the certificates of service on May 2, 2025 and filed a renewed motion for entry of default. ECF Nos. 38-39. The Clerk of Court again denied the motion for entry of default for failure to file proof of service. ECF No. 44. Plaintiff has taken no further action to date. |
| Dirección de Seguridad Publica Municipal de Torreón ("Torreón PD") (Mexican-government entity) | Served October 11, 2024. ECF No. 38-3. | Not yet appeared.<br><br>Same status as CJEM. |
| Jaqueline Reyes Castillo (Mexican individual) | Initially served April 9, 2025, by alternative service via registered email to her personal email and her two most recent lawyers' emails. ECF No. 54-1 at 3; ECF No. 45. The emails to Jaqueline Castillo's most recent lawyers were verified as delivered and opened. *Id.*<br><br>Additionally served on July 28, 2025, via Facebook to her and to the Facebook accounts of the other Castillo Family Defendants. All verified as delivered. ECF No. 66-13. | Not yet appeared. Default not sought. |



United States District Court
Northern District of California

United States District Court
Northern District of California

| Defendant | Service Status | Appearance Status |
|---|---|---|
| María de la Luz Castillo de la Torre<br>(Mexican individual)<br>(Mother of Jaqueline Castillo)[4] | Served July 28, 2025<br>via service to Jaqueline Castillo's personal email and verified delivered. ECF No. 66-5. | Not yet appeared.<br>Default not sought. |
| Luis Antonio Castillo Juarez<br>(Mexican individual)<br>(Cousin of Jaqueline Castillo) | Served July 28, 2025<br>via service to Jaqueline Castillo's personal email and verified delivered. ECF No. 66-4. | Not yet appeared.<br>Default not sought. |
| Gloria Castillo de la Torre<br>(Mexican individual)<br>(Aunt of Jaqueline Castillo) | Served July 28, 2025<br>via service to Jaqueline Castillo's personal email (verified delivered) and also via Gloria Castillo de la Torre's personal Facebook and WhatsApp accounts (verified delivered), Luis Antonio Castillo Juarez's personal Facebook account (verified delivered), and María de la Luz Castillo de la Torre personal WhatsApp account (verified delivered). ECF No. 66-11. | Not yet appeared.<br>Default not sought. |
| Robert Crisp<br>(American individual)<br>(Ex-fiancé of Jaqueline Castillo) | Served on April 19, 2025.<br>ECF No. 37. | Not yet appeared.<br>Default not sought. |
| Pedro Quintero<br>(American individual)<br>(Friend of Robert Crisp) | Not Served.<br>To be served, or motion for alternative service to be renewed, no later than 45 days after Crisp's appearance. *See* ECF No. 32 at 6-7. | Appearance not due. |
| Erik Osiris Rodríguez Huitrón<br>(Mexican individual) | Served April 9, 2025<br>via registered email to private notary office email. Verified as both delivered and opened.<br>ECF No. 54-1 at 4; ECF No. 45-1. | Not yet appeared.<br>Default not sought. |
| Francisco Javier Hernandez Favila<br>(Mexican individual)<br>(Associated with Erik Huitrón and Mexican lawyer of Jaqueline Castillo) | Served April 9, 2025<br>via registered email to private legal office email. Verified as both delivered and opened.<br>ECF No. 54-1 at 4; ECF No. 45-5. | Not yet appeared.<br>Default not sought. |

[4] Connections of Defendants herein are based on the allegations of the SAC and Plaintiff's prior representations to the Court.

United States District Court
Northern District of California

| Defendant | Service Status | Appearance Status |
| --- | --- | --- |
| Enrique Vargas Gutierrez<br>(Mexican individual)<br>(Mexican lawyer of Jaqueline Castillo) | Not served.<br>On June 30, 2025, the Court denied without prejudice Plaintiff's request to serve this Defendant via either (1) group service to the other Castillo Family Defendants or (2) "emails for this Defendant's prior employers," the CJEM and Judicial Branch of the State of Coahuila, because "Plaintiff has not provided any evidence suggesting that Enrique Vargas Gutierrez is still employed by either of these entities." ECF No. 64 at 21.<br><br>The Court explained that Plaintiff's request for alternative service could "be renewed when Plaintiff has located contact information for this Defendant, after the appearance of other Mexican individual defendants or after entry of default as to the Mexican individual defendants with likely knowledge of Enrique Vargas Gutierrez's contact information." *Id.* | Appearance not due. |
| Eduardo Nicolas Mireles Jaime<br>(Mexican individual)<br>(Friend of Jaqueline Castillo) | Served July 28, 2026<br>via Facebook to his personal and business Facebook accounts, and via WhatsApp to his personal and business WhatsApp accounts. All four were verified delivered.<br>ECF No. 66-9. | Not yet appeared.<br>Default not sought. |
| Luis Roberto Magaña Orozco<br>(Mexican individual) | Served April 9, 2025<br>via registered email to two personal email addresses used to communicate with Plaintiff previously. Verified as delivered but not opened.<br>ECF No. 54-1 at 3; ECF No. 45-2.<br><br>Additionally served on July 28, 2025, via WhatsApp and verified delivered. ECF No. 66-19. | Not yet appeared.<br>Default not sought. |

United States District Court
Northern District of California

| Defendant | Service Status | Appearance Status |
|---|---|---|
| Luis Enrique Martin Del Campo Valencia<br>(Mexican individual)<br>(Employee of Roberto Magaña) | Initial service attempted on April 9, 2025, but delivery of email was unsuccessful. ECF No. 54-1 at 3.<br><br>Further service conducted on July 28, 2025, via personal WhatsApp account and verified delivered.<br>ECF No. 66-10. | Not yet appeared.<br>Default not sought. |
| Raymundo Ventura Garcia<br>(Mexican individual)<br>(Employee of Roberto Magaña) | Served July 28, 2025<br>via service to his personal WhatsApp account and verified delivered. ECF No. 66-18. | Not yet appeared.<br>Default not sought. |
| David Obed Salas Ríos<br>(Mexican individual)<br>(Employee of Roberto Magaña) | Not served.<br>Plaintiff's most recent request for alternative service was denied, with leave to renew the request if Plaintiff was able to locate additional contact information for this Defendant, including after the appearance "of other Mexican individual defendants with likely knowledge of David Obed Salas Ríos' contact information." ECF No. 64 at 18-19. | Appearance not due. |
| Juan Carlos Degollado Rodríguez<br>(Mexican individual)<br>(Ministerio Publico at the CJEM) | Served April 9, 2025<br>via registered email to private legal office email and verified delivered.<br>ECF No. 54-1 at 3; ECF No. 45-7. | Not yet appeared.<br>Default not sought. |
| Yolanda de León Garcia<br>(Mexican individual)<br>(Ministerio Publico at the CJEM) | Served April 9, 2025<br>via registered email to personal email and government job email and verified delivered to both.<br>ECF No. 54-1 at 3; ECF No. 45-8. | Not yet appeared.<br>Default not sought. |
| Rodrigo Iván Acevedo Macías<br>(Mexican individual)<br>(Ministerio Publico at the CJEM) | Served April 9, 2025<br>via registered email to government job email and verified delivered.<br>ECF No. 54-1 at 3; ECF No. 45-13. | Not yet appeared.<br>Default not sought. |

United States District Court
Northern District of California

| Defendant | Service Status | Appearance Status |
|---|---|---|
| Bertha Marine Casillas Martínez<br>(Mexican individual)<br>(Coordinator of the CJEM) | Served April 9, 2025<br>via registered email to government job email and verified delivered.<br>ECF No. 54-1 at 3; ECF No. 45-9. | Not yet appeared.<br>Default not sought. |
| María Concepción Mendieta Santos<br>(Mexican individual)<br>(Civil court judge in the state of Coahuila; wife of Roberto Magaña) | Served April 9, 2025<br>via registered email to government job email and verified delivered.<br>ECF No. at 54-1 at 3; ECF No. 45-3. | Not yet appeared.<br>Default not sought. |
| Cristobal Everardo Rodríguez Hernández<br>(Mexican individual)<br>(Plaintiff's Public Defender) | Initial service attempted on April 9, 2025, but delivery of email was unsuccessful. ECF No. 54-1 at 3.<br><br>Further service conducted on July 28, 2025, via personal WhatsApp account and verified delivered.<br>ECF No. 66-8. | Not yet appeared.<br>Default not sought. |
| Judith Arzave Ramírez<br>(Mexican individual)<br>(Plaintiff's Public Defender) | Served April 9, 2025<br>via registered email to government job email and verified delivered.<br>ECF No. 54-1 at 4; ECF No. 45-4. | Not yet appeared.<br>Default not sought. |
| Hugo Humberto Sanchez Arzave<br>(Mexican individual)<br>(Ministerio Publico for the Coahuila AG) | Added to the SAC on April 22, 2026<br>No service attempts on record. | Appearance not due. |
| Dr. Olivia Berenice Espinoza Robles<br>(Mexican individual)<br>(Associated with Roberto Magaña) | Added to the SAC on April 22, 2026<br>No service attempts on record. | Appearance not due. |
| Claudia Marcela Ibarra Betancourt<br>(Mexican individual)<br>(Owner of Ibarra Betancourt Abogados Asociados ("Betancourt Associates"), Plaintiff's Mexican attorneys from September 29, 2022 – June 22, 2023) | Served April 9, 2025<br>via registered email to the email used while acting as Plaintiff's attorney and verified delivered.<br>ECF No. 54-1 at 4; ECF No. 45-10. | Not yet appeared.<br>Default not sought. |

| Defendant | Service Status | Appearance Status |
|---|---|---|
| Virginia Betancourt Rodríguez (Mexican individual)<br>(Attorney at Betancourt Associates) | Served July 28, 2025<br>via registered email to Claudia Marcela Ibarra Betancourt's email used while acting as Plaintiff's attorney (verified delivered), Israhel Martinez Peinado's email used while acting as Plaintiff's attorney (verified delivered and opened), Irving Terrazas Molina's private legal office email (verified delivered), and Luis Fernando Macías Montañez's private attorney email (verified delivered).<br>ECF No. 66-7. | Not yet appeared.<br>Default not sought. |
| Jonathan Chavez Betancourt (Mexican individual)<br>(Attorney at Betancourt Associates) | Served July 28, 2025<br>via registered email to Israhel Martinez Peinado's WhatsApp account (verified delivered), Irving Terrazas Molina's WhatsApp account (verified delivered), and Luis Fernando Macías Montañez's WhatsApp account (verified delivered).<br>ECF No. 66-14. | Not yet appeared.<br>Default not sought. |
| Israhel Martinez Peinado<br>(Mexican individual)<br>(Attorney at Betancourt Associates) | Initially served April 9, 2025<br>via registered email to the email used while acting as Plaintiff's attorney.<br>ECF No. 54-1 at 4; ECF No. 45-6.<br><br>Additionally served July 28, 2025<br>via Claudia Marcela Ibarra Betancourt's email used while acting as Plaintiff's attorney (verified delivered), Irving Terrazas Molina's private legal office email (verified delivered), and Luis Fernando Macías Montañez's private attorney email (verified delivered).<br>ECF No. 66-2. | Not yet appeared.<br>Default not sought. |

United States District Court
Northern District of California

| Defendant | Service Status | Appearance Status |
|---|---|---|
| Irving Terrazas Molina (Mexican individual) (Attorney at Betancourt Associates) | Served April 9, 2025 via registered email to private legal office email. The email was verified as delivered and opened. ECF No. 54-1 at 4; ECF No. 45-12. | Not yet appeared. Default not sought. |
| Luis Fernando Macías Montañez (Mexican individual) (Attorney at Betancourt Associates) | Served April 9, 2025 via registered email to the email used while acting as Plaintiff's attorney. The email was verified as delivered and opened. ECF No. 54-1 at 4; ECF No. 45-12. | Not yet appeared. Default not sought. |
| Gustavo Javier Mares Marquez (Mexican individual) (Plaintiff's Mexican attorney from June 2023 – April 2025) | Added to the SAC on April 22, 2026 No service attempts on record. | Appearance not due. |
| Cesar Obed Flores Martinez (Mexican individual) (Associate of Gustavo Javier Mares Marquez, Plaintiff's Mexican attorney from September 2023 – April 2025 | Added to the SAC on April 22, 2026 No service attempts on record. | Appearance not due. |
| Rolando Castañeda Ruiz (Mexican individual) (Officer with the Torreón PD) | Served July 28, 2025 via WhatsApp to the Torreón PD official account and verified delivered. ECF No. 66-20. | Not yet appeared. Default not sought. |
| Miguel Misael Martinez Anaya (Mexican individual) | Served July 28, 2025 via WhatsApp to the Torreón PD official account (verified delivered and seen) and to his personal WhatsApp account (verified delivered). ECF No. 66-17. | Not yet appeared. Default not sought. |
| Manolo Jiménez Salinas (Mexican individual) (Governor of the State of Coahuila) | Added to the SAC on April 22, 2026 No service attempts on record. | Appearance not due. |
| Luz Elena Guadalupe Morales Núñez (Mexican individual) (President of the State Congress of Coahuila) | Added to the SAC on April 22, 2026 No service attempts on record. | Appearance not due. |



United States District Court
Northern District of California

United States District Court
Northern District of California

Although Plaintiff is proceeding *pro se*, and this case is very complicated, it is nonetheless Plaintiff's responsibility to prosecute his case diligently. Accordingly, the Court **ORDERS** as follows:

1) With regard to: Jaqueline Castillo, María de la Luz Castillo de la Torre, Luis Antonio Castillo Juarez, Gloria Castillo de la Torre, Robert Crisp, Erik Huitrón, Francisco Javier Hernandez Favila, Eduardo Nicolas Mireles Jaime, Roberto Magaña, Luis Enrique Martin Del Campo Valencia, Raymundo Ventura Garcia, Juan Carlos Degollado Rodríguez, Yolanda de León Garcia, Rodrigo Iván Acevedo Macías, Bertha Marine Casillas Martínez, María Concepción Mendieta Santos, Cristobal Everardo Rodríguez Hernández, Judith Arzave Ramírez, Claudia Marcela Ibarra Betancourt, Virginia Betancourt Rodríguez, Jonathan Chavez Betancourt, Israhel Martinez Peinado, Irving Terrazas Molina, Luis Fernando Macías Montañez, Rolando Castañeda Ruiz, and Miguel Misael Martinez Anaya, these Defendants were served over a year ago, have not appeared, and Plaintiff has not moved for entry of default. With regard to the CJEM and Torreón PD, Plaintiff has moved for entry of default, but the Clerk of Court has denied the motion. Accordingly, **no later than September 23, 2026, Plaintiff shall move for entry of default as to these Defendants**. If the motion is denied as to any Defendant, Plaintiff may either correct any errors and renew the motion or, if no errors are apparent, seek relief from this Court for the entry of default. *See, e.g.*, *Bush v. Sunnyvale Dep't of Pub. Safety*, No. 08-cv-01354-LHK, 2012 WL 1192092, at *2–3 (N.D. Cal. Apr. 10, 2012) (explaining that "[a] district court also has the discretion to enter default," and directing the Clerk to enter default after reviewing the Clerk's denial of entry of default).

2) With regard to: Pedro Quintero, Enrique Vargas Gutierrez, David Obed Salas Ríos, over a year has passed since the other Defendants (namely, Robert Crisp, Jaqueline Castillo, and Roberto Magaña, respectively) who are most likely to have contact information about Quintero, Gutierrez, and Ríos were properly served, and none of

United States District Court
Northern District of California

Crisp, Castillo, or Magaña have appeared. Accordingly, **no later than 21 days after default is entered as to Robert Crisp, Jaqueline Castillo, and Roberto Magaña,** Plaintiff **shall** either renew his motion for alternative service as to Quintero, Gutierrez, and Ríos or dismiss them from this case without prejudice.

3) With regard to: Hugo Humberto Sanchez Arzave, Dr. Olivia Berenice Espinoza Robles, Gustavo Javier Mares Marquez, Cesar Obed Flores Martinez, Manolo Jiménez Salinas and Luz Elena Guadalupe Morales Núñez, who were added as Defendants via the SAC on April 22, 2026, Plaintiff is reminded that, even though the 90-day service deadline of Rule 4(m) does not apply to service on foreign individuals under Rule 4(f), Plaintiff must nonetheless diligently pursue service. *See, e.g.*, ECF No. 21 (explaining the same). Accordingly, **no later than September 16, 2026,** Plaintiff shall file a status report setting forth his efforts to serve these Defendants since April 22, 2026.

The case management conference currently set in this matter is hereby **CONTINUED** to Tuesday, November 3, 2026 at 9:00 a.m.

**IT IS SO ORDERED.**

Dated: September 2, 2026

Noël Wise
United States District Judge